### WILLIAM A. PUNGS

*v.*

### THE AMERICAN BRAKE-BEAM COMPANY.

*Opinion filed December 16, 1902.*

CONTRACTS—*when party cannot question validity of his contract.* If the general manager of a manufacturing corporation contracts, with its consent, to also act as superintendent of another manufacturing corporation operating in the same plant but manufacturing different products, he cannot question the validity of his contract upon the ground that it tends to induce him to disregard his duties as general manager of the former corporation, where such corporation does not complain.

*Pungs* v. *American Brake-Beam Co.* 102 Ill. App. 76, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

This is an action in case, begun in the circuit court of Cook county by appellee, the American Brake-Beam Company, a corporation of Chicago, against William A. Pungs, who had been acting for several years as its agent and superintendent, to recover a sum of money made up of items of overcharges, misappropriations, etc.

In 1892 the Michigan Railway Supply Company, a corporation at Detroit, Michigan, was engaged in the manufacture of railroad supplies, one of its products being what is known as the "central steel brake-beam." On that date it sold all its patents pertaining to this brake-beam to the Chicago corporation. On November 25, 1895, the Michigan Railway Supply Company, still owning the special machinery used for the manufacture of the brake-beams, by written contract sold said machinery to the appellee, the contract stipulating that the machinery would remain in the building and plant of the Michigan Railway Supply Company until January 1, 1897, and that the latter company should furnish to the appellee all necessary power to run the same, together with all necessary storage room, switching facilities, etc., to enable it to successfully manufacture said brake-beams, appellee to pay rent for such privileges at the rate of $150 per month, the material for the manufacture of the brake-beams to be furnished by appellee. On the same date, November 25, 1895, appellee made a contract with appellant, William A. Pungs, employing him until January 1, 1897, to superintend the manufacture of the brake-beams, at a salary amounting to $11,411.08 for the whole of said term. The contract of employment also contained a stipulation that the waste material from the manufacture of the brake-beams should be utilized by the

Michigan Railway Supply Company, of which Pungs was treasurer, general manager and one of the stockholders. This contract contained the further provision that Pungs should maintain the present high standard of workmanship, and render assistance to appellee in providing the necessary material for the manufacture of brake-beams "on the best terms possible for the brake-beam company." On January 1, 1897, the time mentioned in the two foregoing contracts having expired, appellant and appellee entered into another contract of employment for one year on substantially the same terms, except that his compensation was to be $5000 per annum. On the same day the supply company entered into a new contract with appellee to furnish the power and rent to it such of its plants, switch tracks, etc., as would be needed in conducting its business another year, the contract being substantially like the former one and at the same rental per month, $150. The waste material was to be turned over to the supply company, whose duty it was, at the end of the year, to account for one-half of its value. During the time covered by the foregoing contracts of employment Pungs superintended the manufacture of the brake-beams, purchasing appellee's supplies used in manufacturing said product, etc., and, as is contended by appellee, fraudulently overcharged it for certain supplies, retaining the difference between the actual cost to him and the invoice price at which it was charged to the appellee company, and that he negligently permitted a large portion of the product to be imperfectly manufactured, etc. To recover the loss sustained by such alleged misconduct appellee brought this suit.

The declaration, as amended, consists of fifteen counts, which, in substance, charge that the appellant, at different periods covered by the foregoing contracts, was the agent, manager and superintendent for plaintiff in its business of manufacturing, and seeks to recover from defendant under the first, second and fifteenth counts (the

latter also being termed an additional count) for over-charges on certain sheets of rolled steel purchased by appellant of the Michigan Railway Supply Company; under the third and fourth counts, certain profits or commissions alleged to have been received by the defendant, particularly on the purchase of five hundred tons of steel from the Wheeling Steel and Iron Company; under the fifth and sixth counts, for loss occasioned to appellee on account of the defective manufacture of 3740 brake-beams made under appellant's superintendence; under the seventh count, the sum of $325 paid by appellee on account of 1300 Christie special heads for use on the brake-beams defectively manufactured; and under the twelfth count, for $46 in money claimed to have been used by appellant for his own private purposes. The eighth, ninth, tenth, eleventh, thirteenth and fourteeenth counts need not be noticed, as the recovery under the first four was remitted by the plaintiff, and the court instructed the jury there could be no recovery under either the thirteenth or fourteenth count.

Upon the plea of general issue and trial before a jury a verdict was returned for the plaintiff for $10,292.32, from which, pending a motion for a new trial, the plaintiff remitted the sum of $4142.69, which was the amount recovered under the eighth, ninth, tenth and eleventh counts of the declaration, with interest thereon. Judgment was entered on the remainder of the verdict, viz., $6149.63, from which an appeal was taken to the Appellate Court for the First District, where the judgment below was affirmed. Pungs brings the cause to this court upon further appeal.

Dwight C. Rexford, and Charles R. Whitman, for appellant.

Shope, Mathis, Zane & Weber, and Francis A. Riddle, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellee having employed appellant to superintend the manufacture of its product, purchase supplies, etc., and having paid him a salary therefor, insists in this action that he should pay it whatever loss or damage it has sustained by reason of his wrongful or negligent acts in violation of his contract of employment. In other words, the theory of the action is, that it was the defendant's duty, under his agreement, to purchase supplies at the "best pos＿ ˋ ˡe terms" for plaintiff, and having purchased them at       rice and sold them to it at a higher price, retaining tʜ＿ˋdifference, he committed a breach of his contract, to the damage of appellee; also, having by the terms of his contract agreed to maintain the "present high standard of workmanship," and contrary to those terms having defectively manufactured a large number of brake-beams, he was bound, in law, to re-pay the plaintiff any loss it thereby sustained.

Whether the appellant wrongfully overcharged appellee and negligently performed his duty are questions of fact which have been settled by the Appellate Court. But it was contended below, and is again urged here, that even if the facts are as charged, the contracts of employment are illegal and void, and therefore there can be no recovery under the first, second and fifteenth counts, based upon such contracts. The ground upon which the contracts are said to be illegal is, that they tend to induce Pungs to act contrary to his duties as an officer of the Michigan Railway Supply Company. The rule is invoked that contracts with officers of corporations which tend to induce them to disregard their duties are illegal and void. Whether that rule could be invoked by the defendant in this action need not be decided, for the reason that the contracts, properly construed, do not, in any sense, tend to induce the defendant to disregard his duties to the Michigan corporation. As before stated, Pungs was the treasurer and general manager of

the latter company, but its business was manufacturing and dealing in nuts, washers and other similar railway supplies. The business of appellee was confined to manufacturing brake-beams only. Therefore the business of the two corporations was distinct and in no way conflicted. Appellee's product was manufactured in the building and plant of the Michigan Railway Supply Company, and Pungs could superintend the business of both corporations without conflict in the performance of his duties. To do his whole duty to appellee under his contract of employment in no sense required him to neglect his duty to the other corporation. As shown by the foregoing statement, the contracts were not entered into without the knowledge of the supply company nor has it at any time complained of them, but, on the other hand, though contended to the contrary, we think it sufficiently appears that both corporations, by their boards of directors, approved the contracts. Since the Michigan Railway Supply Company does not complain, appellant should not be allowed to question the validity of his own contract, fairly entered into, on the theory that he might have been acting contrary to the interests of that company. Numerous decisions are cited by counsel in support of the contention that the contract of employment was illegal and void, but none of them are applicable to the facts in this case.

One of the grounds of attacking the first contract of employment is the fact that by its recitals it was not to become operative unless the other contract, satisfactory to appellee, was entered into for the sale by the supply company to appellee of its brake-beam machinery, and because the large salary which appellant was to have was an inducement to him to use his influence, as a director of the supply company, to bring about the sale. These facts might become important to the supply company if it was seeking to avoid the sale of its machinery, and, under the authorities cited and relied upon by appel-

lant, his undertaking to act as superintendent for appellee might have been illegal, as against that company, had it been concealed from it; but the facts as to the making of these contracts being open and known to the two corporations, they having ratified them, and the further fact that the relations between them were close and friendly, both operating in one plant, we think it cannot be said that the contracts of employment had a tendency to induce the appellant to act contrary to his duties as an officer of the supply company.

Nor can appellant be heard to insist, as is attempted, that the contracts of leasing, etc., between the two corporations are void because in unlawful restraint of trade. As before stated, they manufactured entirely different articles. There is in these contracts no element of a combination or confederation to restrain competition. But even if such were found in them, the contracts contain independent covenants, aside from those objected to, which are clearly enforceable. Upon no substantial legal ground can appellant be heard to complain of the validity of his agreements to excuse his wrongful acts.

As to the alleged overcharges on certain sheets of rolled steel mentioned in counts 1, 2 and 15, and the loss sustained by appellee by reason of the defective manufacture of brake-beams, the contention involves disputed questions of fact which have been settled adversely to the appellant by the Appellate Court and over which we have no jurisdiction.

It is also contended that the court erred in giving the fourth and fifth instructions on behalf of appellee. The fourth in effect told the jury that there might be a recovery on account of the alleged defective brake-beams because they were not manufactured to the satisfaction of the plaintiff. Under the same instruction the jury were required to find, first, that the contract of employment was executed by the parties and approved by the board of directors of the plaintiff company; and second, that

it became and was the defendant's duty and obligation to superintend the manufacture and shipment of such brake-beams as were manufactured by or for the plaintiff, and to cause the work to be done efficiently, promptly and to the satisfaction of the plaintiff, and if he failed to do so, and if the jury, from the evidence, found that by such failure any brake-beams were not manufactured to the satisfaction of the plaintiff or were defectively manufactured and rendered unfit for brake-beams, and the plaintiff suffered loss or damage thereby, then that on this issue the defendant was guilty, as alleged in the declaration. The fifth is substantially the same, except that it instructed the jury, in addition to the foregoing, that if they found that the defendant, without instructions from the plaintiff and against its desires and instructions, procured to be manufactured 1300 special heads to fit said brake-beams, if any were so defectively manufactured, and by reason whereof the cost of the manufacture of said special heads was lost to the plaintiff, then it was their duty to find the defendant guilty of wrongful conduct and breach of duty, as alleged, and the verdict should be for the plaintiff. Under the language of the contracts in question and the evidence submitted to the jury we think these instructions are not fairly subject to criticism. As said in the opinion of the Appellate Court, they only allow a recovery upon a showing, by the evidence, that the beams were rendered unfit for brake-beams by reason of their defective manufacture. To say the least, when considering the instructions as a series they appear to be fair to the appellant.

Other questions are raised as to the giving of instructions and the admission and exclusion of evidence, but upon a careful examination of the record we are satisfied no substantial error was committed in that regard.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*